UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

BATTLE MOUNTAIN BAND of the TE-MOAK TRIBE OF WESTERN SHOSHONE INDIANS,

Plaintiff,

v.

UNITED STATES BUREAU OF LAND MANAGEMENT; and JILL C. SILVEY, in her official capacity as Bureau of Land Management Elko District Manager,

Defendants, and

CARLIN RESOURCES, LLC,

Defendant-Intervenor.

Case No. 3:16-cv-0268-LRH-WGC

ORDER

Before the court is plaintiff the Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indians' (the "Battle Mountain Band" or "Band")[1] motion to dismiss defendant-intervenor Carlin Resources, LLC's ("Carlin") cross-claims (ECF No. 98). ECF No. 104. Carlin filed an opposition (ECF No. 113) to which the Battle Mountain Band replied (ECF No. 120).

///

///

---

[1] Plaintiff is one of four bands that comprise the Te-Moak Tribe of Western Shoshone Indians, a federally recognized Indian tribe. The Band lives on colony land near Elko, Nevada.

1

I.     **Facts and Procedural Background**

This action has an extensive factual and procedural history,[2] but in brief, this action involves the various agency decisions and federal permits issued by the BLM authorizing a mining project on land known as the Tosawihi Quarries located in Elko County, Nevada.[3] Specific portions of the quarries have been identified by the Battle Mountain Band as its traditional cultural property ("TCP").[4]

Defendant BLM is the federal agency responsible for overseeing and administering public lands, including the public lands on which the Tosawihi Quarries and the Battle Mountain Band's identified TCPs exist. As part of its administration of these lands, the BLM is authorized to issue permits and leases for use of the land including the mining of natural resources. Further, the BLM is authorized to make eligibility determinations for the inclusion of land, including TCPs, on the National Register of Historic Places ("National Register").[5] At all relevant times, defendant Silvey was the Elko District Manager of the BLM and was the person in charge of the Tosawihi Quarries.

Intervenor Carlin is the owner of certain mining rights within the Tosawihi Quarries. In 2008, Carlin applied for a permit from the BLM to convert certain land in the quarries from an exploratory mining area into a functional mining operation known as the Hollister Mine Project ("the project"). The project was ultimately approved by the BLM after six-years of agency and

---

[2] For a more in-depth history of this action, see the court's order on plaintiff's motion for a preliminary injunction. ECF No. 78.

[3] The Tosawihi Quarries are the largest opalite quarry in the Great Basin and is approximately 3700 acres in size. Previous historical and anthropological research conducted at the quarries indicated that they have been utilized by indigenous people for at least 10,000 years. The entirety of the Tosawihi Quarries is located within a naturally designated historical and archaeological district known as the Tosawihi Quarries Archaeological District. Portions of the quarries have been open to various mining activities for over 100 years.

[4] A "traditional cultural property" is one associated with "cultural practices or beliefs of a living community that (a) are rooted in that community's history, and (b) are important in maintaining the continuing cultural identity of the community." *Navajo Nation v. U.S. Forest Serv.*, 479 F.3d 1024, 1029 (9th Cir. 2007). If a particular location is identified by an Indian tribe as a traditional cultural property, then that land is treated as a TCP by the BLM for purposes of the National Historic Preservation Act. Designation as a TCP is based on an Indian tribe's historical connection to a particular location and only requires the tribe claim an area as a TCP.

[5] Relevant to this action, the BLM is the appropriate agency to make TCP eligibility determinations related to the Tosawihi Quarries. Eligibility for the National Register is determined by federal laws and regulations governing historical properties. To be considered eligible for the National Register, a particular location must meet several criteria identified at 36 C.F.R. § 60.4 which requires substantial evidence of historical use. Thus, not all TCPs are eligible for inclusion on the National Register.

public review. During the review process, the BLM made several decisions concerning the eligibility of the Band's identified TCPs for inclusion on the National Register.[6] Further, the BLM, Carlin, and non-parties the Nevada State Historic Preservation Office ("NSHPO") and the Advisory Council on Historic Preservation ("ACHP") negotiated an ongoing agreement for the preservation of historic lands during the project known as the Programmatic Agreement ("project PA").[7] Ultimately, on March 31, 2014, the BLM issued its final Record of Decision ("ROD") approving the project.

In late 2015, after the project ROD had been issued, the Battle Mountain Band invoked the dispute resolution provisions of the project PA in an effort to have the BLM determine the eligibility of new TCPs, not previously identified during the six-year review process, for inclusion on the National Register. On April 19, 2016, after completion of the dispute resolution process, the BLM, without consultation with Carlin, determined that the newly identified TCPs were eligible for inclusion on the National Register. Thereafter, on May 19, 2016, the Battle Mountain Band filed the underlying complaint for declaratory and injunctive relief alleging that defendants violated the National Historic Preservation Act ("NHPA") by failing to reconsider their decision to allow Carlin to proceed with the project on land which the BLM now considers eligible for the National Register.

In response to the Band's complaint, Carlin filed a motion to intervene under Rule 24 of the Federal Rules of Civil Procedure (ECF No. 20) which was granted by the court (ECF No. 55). After being granted the right to intervene in this action, Carlin filed cross-claims against defendants alleging violations of NHPA and the Administrative Procedures Act ("APA").

---

[6] After the completion of a historical inventory by Carlin on the project land, the BLM found that twenty of the Band's identified TCPs were eligible for inclusion on the National Register. Then, in 2013, a second inventory was conducted on the project. As a result of that survey, and additional information of historic use provided by the Band, additional TCPs within the Tosawihi Quarries were deemed eligible for inclusion in the National Register.

[7] As outlined in 34 C.F.R. § 800.14, the ACHP, the BLM, and other relevant parties "may negotiate a programmatic agreement to govern the implementation of a particular program or the resolution of adverse effects from certain complex project situations or multiple undertakings" on historic lands. A programmatic agreement constitutes the governing document for a particular project as it relates to determining and dealing with the environmental impacts of a project on historical land, and supersedes certain federal regulations. *See* 36 C.F.R. §§ 800.13-14. Programmatic agreements are particularly useful "[w]hen effects on historic properties cannot be fully determined prior to approval of an undertaking." 36 C.F.R. § 800.14(b)(1)(ii). A copy of the project PA is included as Exhibit 1 to the BLM's notice of corrected document. *See* ECF No. 106, Ex. 1.

ECF No. 98. In its cross-claims, Carlin alleges that defendants' failure to consult with Carlin on the BLM's April 2016 decision that certain land within the Tosawihi Quarries was eligible for inclusion on the National Register was procedurally improper and contrary to Carlin's rights under the project PA. *Id.* Thereafter, the Band filed the present motion to dismiss Carlin's cross-claims. ECF No. 104.

II. **Discussion**

In its motion to dismiss, the Battle Mountain Band raises three separate arguments for why the court should dismiss Carlin's cross-claims. First, the Band contends that it is a necessary and indispensable, but unjoinable party to the cross-claims. Second, the Band argues that Carlin failed to exhaust its administrative remedies prior to filing the cross-claims. Finally, the Band contends that Carlin lacks Article III standing to bring its cross-claims.

The court has already found that Carlin has constitutional standing to bring its cross-claims against defendants. *See* ECF No. 124. Therefore, the court shall deny the Band's motion to dismiss as to this issue. The court shall address the Band's remaining two arguments below.

A. **Necessary and Indispensable Party**

The Battle Mountain Band seeks dismissal of Carlin's cross-claims under Rule 12(b)(7) of the Federal Rules of Civil Procedure for failure to join a necessary and indispensable party. *See* ECF No. 104.

Under Rule 12(b)(7), a complaint must be dismissed if it fails to join a necessary and indispensable party under Rule 19. FED. R. CIV. P. 12(b)(7). Rule 19 provides that a party is necessary if (1) in that party's absence, "the court cannot accord complete relief among existing parties," or (2) the party claims "an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may" impair or impede the party's ability to protect their interest or subject that party to substantial risk of inconsistent judgments. FED. R. CIV. P. 19(a)(1). If a court finds that a party is necessary under Rule 19(a), then the court must next determine whether the necessary party can be joined, and if it cannot be joined, whether the party is so indispensable that in "equity and good conscience" the case must be dismissed. *Shermoen v. United States*, 982 F.2d 1312, 1317-18 (9th Cir. 1992). The court's

inquiry is a "practical one" and considers the prejudice to both existing and absent parties. *Id*. at 1317.

The Band argues that it is a necessary party to this action because it has an interest in preserving the BLM's April 2016 decision that certain of the Band's identified TCPs are eligible for inclusion on the National Register. *See* ECF No. 104. The court agrees. The court has reviewed the documents and pleadings on file in this matter and finds that the Band has a legally protectable interest in the outcome of Carlin's cross-claims, as certain relief sought in Carlin's cross-claims would negate the BLM's decision. *Shermoen*, 982 F.2d at 1317 (stating that "the finding that a party is necessary to the action is predicated only on that party having a claim to an interest[.]"). Where a party has a "legally protected interest" in the subject of the suit, they are a necessary party under Rule 19(a) if "the disposition of the action in the [tribes'] absence may as a practical matter impair or impede the [tribes'] ability to protect that interest."
FED. R. CIV. P. 19(a)(2)(i). And here, the court finds that the Band's absence would impede its ability to protect its interest in its historic properties.

The court recognizes that in certain cases the United States may adequately represent the rights of an Indian tribe in an action that the tribe has an interest in under the United States' trust responsibility. *See Makah Indian Tribe v. Verity*, 910 F.2d 555, 560 (9th Cir. 1990). However, in this case the BLM has a conflict with the Band as a result of the Band's complaint alleging that the BLM violated certain provisions of NHPA and its trust responsibility. *See* ECF No. 1. Further, the BLM's April 2016 decision arose in response to the Band initiating dispute resolution proceedings against the BLM. Thus, although defendants might share the same ultimate goal as the Band concerning Carlin's cross-claims, namely, establishing that the BLM did not violate the project PA in making its April 2016 eligibility decision, the court finds that "it is unlikely that the government could sufficiently represent the competing interests and divergent concerns" of the Band because the defendants also seek to vindicate their decisions and conduct challenged by the Band. *Shermoen*, 982 F.2d at 1318. Therefore, the court finds that the Band is a necessary party to Carlin's cross-claims under Rule 19.

///

As the court has found that the Band is a necessary party to Carlin's cross-claims under Rule 19, the court must now determine whether the Band can be joined to the cross-claims, and if not, whether the Band is so indispensable that the case must be dismissed. *See Shermoen*, 982 F.2d at 1317-18. In its motion, the Band contends that it has sovereign immunity from Carlin's cross-claims and thus, it cannot be joined to the cross-claims. However, as addressed below, the court finds that the Band has waived its sovereign immunity and can be joined as a necessary party to Carlin's cross-claims.

Generally, as a matter of law, Indian tribes and the governing bodies are not subject to suit under the tribe's sovereign immunity. *See Tohono O'odham Nation v. Ducey*, 174 F.Supp.3d 1194, 1201 (D. Ariz. 2016) (stating that "Indian Tribes enjoy sovereign immunity" and are not "amenable to suit unless Congress has clearly abrogated this immunity or the tribe has clearly waived it."). However, there is a recognized limited waiver to a tribe's sovereign immunity arising from the tribe's filing of a lawsuit, "with respect to issues the [tribe] itself has put at issue." *See id.* at 1204. Specifically, the filing of a complaint constitutes consent "to a judicial determination of the 'rights and other legal relations of the parties' when [a tribe] seeks a declaration of those rights and relations." *Id.* (quoting *Oneida Tribe of Indians of Wis. v. Village of Hobart*, 500 F.Supp.2d 1143, 1149 (E.D. Wis. 2007); *see also, United States v. State of Oregon*, 657 F.2d 1009, 1015 (9th Cir. 1981) (holding that by filing its complaint, a tribe "assumed the risk that its position would not be accepted, and that the Tribe itself would be bound by an order it deemed adverse."); *McClendon v. United States*, 885 F.2d 627, 630 (9th Cir. 1989) (holding that "[i]nitiation of a lawsuit necessarily establishes consent to the court's adjudication of the merits of that particular controversy."). The issue before the court, then, is whether Carlin's cross-claims involve similar legal issues and rights as those raised in the Band's complaint.

Here, based on the nature of the Battle Mountain Band's challenges to the BLM's conduct and decisions relating to the mining project, the court finds that the Band has waived its sovereign immunity with respect to the issues raised in Carlin's cross-claims. The issues raised by the Band in its complaint include whether defendants violated NHPA by failing to reconsider

the project ROD in light of the BLM's April 2016 decision. Inherent in this claim is the issue of whether the April 2016 decision is valid. This is the exact issue raised by Carlin in its cross-claims. *See* ECF No. 98. Thus, the court finds that the Band has waived its sovereign immunity to the issues raised in Carlin's cross-claims and can be properly joined as a necessary party to these claims. Therefore, the court shall deny the Band's motion to dismiss as to this issue. Further, the court shall grant Carlin twenty (20) days after entry of this order to file amended cross-claims against defendants that join the Battle Mountain Band to those claims.

### B. Exhaustion of Administrative Remedies

The Battle Mountain Band also seeks to dismiss Carlin's cross-claims on the basis that it has failed to exhaust its administrative remedies prior to filing cross-claims against defendants. *See* ECF No. 104. Generally, a party may not seek judicial review of an adverse administrative decision under the Administrative Procedures Act until the party first pursues all possible relief within the agency. *Young v. Rebo*, 114 F.3d 879, 881 (9th Cir. 1997); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882–83 (1990). An agency action is not "final" for purposes of the APA until "an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule." *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1233 n.9 (10th Cir. 2005).

Initially, the court notes that there are no allegations contained within Carlin's cross-claims which would establish its exhaustion of administrative remedies prior to filing its cross-claims. In its opposition, Carlin contends that it filed an appeal with the Interior Board of Land Appeals and that this appeal was sufficient to exhaust its administrative remedies. Yet, this allegation was not plead in the cross-claims and, as such, the cross-claims are facially deficient.

However, Carlin has also raised an argument pursuant to *Darby v. Cisneros*, 509 U.S. 137 (2005), that exhaustion of the BLM's April 2016 eligibility determination was not necessary in this particular action. Under *Darby*, exhaustion of certain agency decisions is not necessary prior to filing suit if that decision constitutes a final agency action and the agency refused to stay its decision, or if an appeal of a decision is not required by federal statute. *Id*. Carlin contends that the BLM's decision was final once the BLM refused to stay its eligibility determination.

Therefore, under *Darby*, Carlin contends that it could file its cross-claims without further exhausting any available administrative remedies.

This issue has not been sufficiently briefed by the parties in the present motion. This argument was initially raised in Carlin's opposition to the motion to dismiss (ECF No. 113) and was only tangentially discussed in the Band's reply (ECF No. 120). Thus, the court cannot decide this issue based solely on the present record and briefing. Therefore, the court shall deny the Band's motion to dismiss as to this issue without prejudice and grant the Band leave to file a renewed motion to dismiss on this issue, if it desires, after the filing of Carlin's amended cross-claims.

IT IS THEREFORE ORDERED that plaintiff's motion to dismiss cross-claims (ECF No. 104) is DENIED without prejudice in accordance with this order.

IT IS FURTHER ORDERED that defendant-intervenor Carlin Resources, LLC shall have twenty (20) days after entry of this order to file amended cross-claims in accordance with this order.

IT IS SO ORDERED.

DATED this 28th day of March, 2018.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE